NOT DESIGNATED FOR PUBLICATION

No. 119,498

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Matter of the Estate of
ESTHER M. BAUMAN.

MEMORANDUM OPINION

Appeal from Doniphan District Court; JAMES A. PATTON, judge. Opinion filed May 3, 2019.
Affirmed.

*R. Edward Murphy* and *Lindsey B. Holcumbrink*, of Murphy, Taylor, Siemens & Elliott, P.C., of
St. Joseph, Missouri, for appellant Jerry E. Bauman.

*William R. McQuillan*, of Troy, for appellee Keith L. Bauman.

Before LEBEN, P.J., BUSER and STANDRIDGE, JJ.

PER CURIAM: Jerry E. Bauman appeals from the decision of the district court
declining to enforce the provisions of an *in terrorem* clause in Esther M. Bauman's last
will and testament against his brother, Keith L. Bauman. Jerry argues that Keith, a
beneficiary of Esther's will, forfeited his rights by contesting the will in violation of the *in
terrorem* clause. Because there is substantial competent evidence to support the district
court's finding that Keith had probable cause to contest Esther's will, we find the district
court properly determined that Keith did not forfeit his interest under the will.

FACTS

Esther M. Bauman died testate on December 24, 2014. Esther was survived by
five adult children. Esther's last will and testament, executed on January 13, 2012, named

1

only two of her children as beneficiaries and divided her estate equally between her sons, Jerry and Keith. Article VII of Esther's will contained the following provision, referred to as an *in terrorem* clause:

> "B.  If any devisee, legatee, heir at law, or anyone who is entitled to receive a gift or bequest under the terms of this my Last Will and Testament shall in any manner, directly or indirectly, attempt to contest or oppose the validity of this Will, including any amendments or codicils thereto, or commence or prosecute any legal proceedings to set aside this Will, then such person contesting this Will shall forfeit his or her share of this Estate and shall cease to have any right or interest in the Estate property. The share of such person contesting this Will shall be distributed as if they predeceased me without any living descendants."

The will named Jerry as executor of the will. Jerry filed a petition for probate of will and issuance of letters testamentary on June 15, 2015.

On October 26, 2015, Keith filed a handwritten letter with the district court which stated: "I, Keith L. Bauman, wish to contest the Probate of 2015-PR-000015 in the Matter of the Estate of Esther M. Bauman." On November 19, 2015, Keith filed a second handwritten letter with the district court which stated: "I, Keith Bauman, wish to withdraw the letter contesting the Will of Esther M. Bauman."

On November 30, 2015, Esther's will was admitted to probate and letters testamentary were issued to Jerry. He filed an inventory and evaluation on February 18, 2016. As executor, Jerry was authorized to sell any of Esther's personal property that remained after Jerry and Keith had the opportunity to choose the items they wanted to keep. To that end, Jerry hired an auction company to conduct an estate sale of Esther's personal belongings. Keith, claiming that he never had the opportunity to examine any of Esther's personal property, tried to stop the sale by going to Esther's house and telling the auction company employees to leave. Jerry and Keith were later involved in a physical

2

altercation after Keith saw the auction company employees at Esther's house again. The estate sale ultimately took place and yielded $1,450.

On March 27, 2017, Jerry filed a Petition for Assignment of Estate Assets. In the petition, Jerry sought to invoke the *in terrorem* clause, arguing that Keith had forfeited his share of Esther's estate by contesting the will in two ways: (1) filing the October 26, 2015 letter with the court and (2) interfering with Jerry's attempts to conduct the estate sale.

In response, Keith sought to have Jerry removed as executor of Esther's estate for failing to administer and enforce the terms of the will. Keith alleged that Jerry had breached his fiduciary duty because he did not file a complete inventory of Esther's personal property and did not allow Keith to choose any items of personal property prior to the estate sale.

The parties appeared before the district magistrate judge for a hearing on both motions. After reviewing evidence and hearing argument from the parties, the court held that Keith, "by his own admission, did attempt to contest and oppose the probate of Decedent's Will, however, the Court concludes as a matter of law that Decedent's Will does not require Respondent Keith Bauman's share of the Estate to be forfeited as a result." The court also denied Keith's motion to remove Jerry as executor of the estate.

Both parties appealed the district magistrate judge's ruling to the district court. After hearing testimony from Jerry and Keith and considering exhibits and argument from counsel, the district court denied both motions. Jerry timely appeals from the district court's decision declining to enforce the provisions of the *in terrorem* clause against Keith.

3

Jerry argues the district court erred in declining to enforce the *in terrorem* clause in Esther's will. Jerry contends that Keith's actions of filing the October 26, 2015 letter and interfering in the estate sale constituted attempts to contest Esther's will that were in direct violation of the will's *in terrorem* clause. Resolution of this issue requires the interpretation and legal effect of written instruments, which are matters of law subject to unlimited review. *Born v. Born*, 304 Kan. 542, 554, 374 P.3d 624 (2016).

An *in terrorem* clause is defined as "a clause in a will in which a testator imposes upon a devisee or legatee a condition that he or she shall not dispute the provisions of the will or the gift shall be void." *In re Estate of Koch*, 18 Kan. App. 2d 188, 207, 849 P.2d 977 (1993). Our Supreme Court has held that *in terrorem* clauses are to be given effect when a beneficiary attacks the validity of the will without probable cause to do so. *In re Estate of Foster*, 190 Kan. 498, 500, 376 P.2d 784 (1962).

At the hearing on the parties' motions, Keith testified that he filed the letter contesting the will because it "wasn't what [Esther] wanted done." Keith stated that he only learned of the will after Esther's death and claimed that Esther had previously expressed an intent that her estate be equally divided among all five of her children. Keith said that he had regular contact with Esther prior to her death and felt that "[s]he didn't know what she was doing a lot of the time." Keith explained that Esther would often complain about being taken upstairs and punished, yet the nursing home she lived in was a one-story building. Keith said that Esther also mistakenly believed that Jerry had died and was frozen. In addition, Keith noted that when Esther initialed and dated each page of the will, she wrote "1-13-2000," rather than the correct date of "1-13-2012."

Keith admitted that prior to filing the letter contesting the will, he did not speak to any potential witnesses, including the attorneys who had prepared the will or to any of

Esther's doctors to obtain any evidence about her physical or mental health. Keith said that he filed the letter contesting the will based on what Esther had told him regarding her wishes and agreed that he had no probable cause to support the will contest "[o]ther than what [his] mother told [him]." Keith stated that he had no medical or legal training and did not think it was possible to obtain any medical evidence before the hearing on admitting the will to probate. Keith testified that he later withdrew his letter contesting the will because he did not have time to "get enough information to proceed with it."

At the conclusion of the hearing, the district court denied Jerry's attempt to enforce the *in terrorem* clause for two reasons. First, the judge found that Keith had probable cause to contest Esther's will:

> "In this particular case the issue was Mr. Keith Bauman, knowing what his mother had told him as opposed to what she may have told another son later on, the history of this family is that that happened a lot. They didn't necessarily communicate well and they quite often said whatever they needed to say to whomever they were in front of. I've told the parties I've been involved with this family for 30 some years, I have no idea. But the real issue is he understood what his mother had told him. Now whether it was during a period of lucidity, or whether it was during a period of not being lucid, she had indicated to him certain things that were supposed to happen and didn't. And he had a reasonable belief that that was not correct."

Second, the judge suggested that the *in terrorem* clause did not apply because Keith withdrew his letter contesting the will before litigating the matter in court or before Jerry was forced to respond.

On appeal, Jerry maintains that Keith violated the *in terrorem* clause in Esther's will by (1) filing the October 26, 2015 letter and (2) interfering in the estate sale.

1. *The letter*

There is no question that Keith's October 26, 2015 letter contesting Esther's will implicated the will's *in terrorem* clause, which prohibited any heir from "directly or indirectly, attempt[ing] to contest or oppose the validity" of Esther's will. Indeed, the letter's language explicitly stated that Keith wished to contest Esther's will. And Keith testified that the letter expressed his desire to contest or invalidate the will. Contrary to the district court's ruling, Keith's later withdrawal of the letter contesting the will is irrelevant according to Restatement (Second) of Property § 9.1 (1983). Comment e of the Restatement provides:

> "*e. Extent to which contest or attack is pressed*. The commencement of an action to contest a will or other donative transfer or to attack a particular provision thereof, upon any of the grounds within the scope of the clause restraining such contests or attacks, should normally be construed to be a violation of the restraint. In the absence of specific language to the contrary, the restraint should be construed to be violated regardless whether the action to contest the dispositive document or to attack a particular provision thereof is subsequently withdrawn either immediately after its commencement, prior to a hearing, at the trial, or at any time thereafter." Restatement (Second) of Property § 9.1, Comment e (1983).

But Keith's contest of the will only constituted a violation of the *in terrorem* clause if he lacked probable cause to make a contest or attack. See *In re Estate of Foster*, 190 Kan. at 500. Probable cause is "'the existence, at the time of the initiation of the proceeding, of evidence which would lead a reasonable person, properly informed and advised, to conclude that there is a substantial likelihood that the contest or attack will be successful.'" *In re Estate of Campbell*, 19 Kan. App. 2d 795, 801, 876 P.2d 212 (1994) (quoting Restatement [Second] of Property § 9.1, Comment j). Whether a litigant has probable cause to make a contest or attack is "applied to the specific facts on a case-by-case basis." *In re Estate of Wells*, 26 Kan. App. 2d 282, 285, 983 P.2d 279 (1999).

Appellate review involves a mixed question of fact and law. "Determination of probable cause is normally a question of fact. But where the record reflects no factual dispute, the determination of probable cause is a question of law over which this court has unlimited review." 26 Kan. App. 2d at 285. Factual findings are reviewed for substantial competent evidence. "Substantial competent evidence is '"evidence which possesses both relevance and substance and which furnishes a substantial basis of fact from which the issues can reasonably be resolved."' [Citation omitted.]" *Wiles v. American Family Life Assurance Co.*, 302 Kan. 66, 73, 350 P.3d 1071 (2015).

Citing the district court's written order, Jerry contends that the court failed to make any probable cause findings and therefore, in deciding that the *in terrorem* clause did not apply, relied only on its erroneous finding that Keith's letter did not lead to further litigation. But the district court's oral ruling from the bench at the conclusion of the hearing specifically referenced the probable cause standard as well as Keith's "reasonable belief" that the will did not reflect Esther's wishes.

Under the particular facts of this case, Keith had probable cause to contest Esther's will when he filed the October 26, 2015 letter. Keith testified that Esther had previously expressed a desire to divide her estate between all five of her children and that he was surprised by the 2012 will that divided the estate between him and Jerry only. Keith stated that Esther was often confused prior to her death and had incorrectly dated the pages of the will. Keith's prior deposition testimony provides additional evidence to support his contest of Esther's will. Keith testified that 7 to 10 years before Esther died, she showed him a different will which provided that her estate was to be divided among all five of her children. Keith stated that when Esther lived in the nursing home she was often confused or "mixed up" and was on medication that made her violent. Keith said that he opposed the probate of the 2012 will because it was "not what [Esther] would have done if she would have been in her sound mind" and that she had executed the previous will "when she knew what she was doing."

7

Jerry makes much of the fact that Keith had no medical witnesses or documentary evidence to support his challenge to Esther's mental capacity. But Keith was not required to have any witnesses or documentation at the time he contested the will. Keith was required to present "'evidence which would lead a reasonable person, properly informed and advised, to conclude that there is a substantial likelihood that the contest or attack will be successful.'" *In re Estate of Campbell*, 19 Kan. App. 2d at 801. Notably, "[t]he evidence needed to establish probable cause should be less where there is strong public policy supporting the legal ground of the contest or attack." Restatement (Second) of Property § 9.1, Comment j. Strong public policy supports a will contest based on a testator's suspected lack of mental capacity, the principal ground for the contest in this case. Keith's testimony outlined above constituted sufficient evidence that Keith, as a reasonable person properly informed and advised, had grounds to believe there was a substantial likelihood of success at the time of filing the contest, even if this belief was later overcome by other evidence in the form of medical records or witness testimony. See Restatement (Second) of Property § 9.1, Comment j, Illustration 10 ("The son contested the will on the ground that his father did not have the mental capacity to make a will. His contest failed because it was determined that the will was executed during a lucid interval of his father. The conclusion is justified that there was probable cause for the contest and thus the son's interest under the will is not forfeited."). Because there is substantial competent evidence to support the district court's finding that Keith had probable cause to contest Esther's will, the court properly determined that Keith did not forfeit his interest under the will.

2. *Interference with the estate sale*

Jerry also argues that Keith's actions of interfering with the discharge of Jerry's lawful authority as executor of the estate in attempting to sell estate assets constituted a violation of the *in terrorem* clause.

8

Although Jerry raised this argument in his Petition for Assignment of Estate Assets, the district court made no specific findings on whether Keith's interference with the estate sale violated the *in terrorem* clause. In any event, Jerry is not entitled to relief because Keith's interference with the estate sale did not constitute an "attempt to contest or oppose the validity of" Esther's will. To the contrary, Esther's will specifically provided that Jerry only had authority to sell any personal property remaining after Jerry and Keith had divided the property by agreement. Keith testified that he opposed the estate sale because Jerry had not allowed him to examine the items from Esther's house prior to the intended sale. Keith's interference with the estate sale involved a disagreement with how Jerry was administering the estate. Keith's actions did not constitute an attempt to contest the validity of Esther's will or otherwise implicate the *in terrorem* clause.

Affirmed.